JUSTICE NELSON
dissents.
¶32 I cannot agree with the Court’s decision in this case. As facially appealing as is its approach to the question of whether Montana’s double jeopardy provision, Article II, Section 25, provides greater protection against multiple punishments than the does the Fifth Amendment, the majority’s conclusion that it does is not supported by a shred of legal authority. Reduced to its essentials, the Court concludes that Article II, Section 25, provides this greater protection for no other reason than that we say it does.
¶33 Understandably, the Court does not rely on any argument made by Guillaume. His entire brief and oral argument was devoted, not to developing any legal basis for the majority’s holding here, but, rather, to simply rehashing why, in State v. Zabawa (1996), 279 Mont. 307, 928 P.2d 151, the dissent was right and the Court was wrong. He, like the majority, utterly failed to develop any independent and legally supportable theory based upon the language of Article II, Section 25, or its history in the 1971-72 Constitutional Convention that would justify the holding that this Court has reached. The Court does no better in its opinion. In fact, the majority pointedly ignores the legislative history of Article II, Section 25 — no doubt because it could not find in the transcripts of the Constitutional Convention any support for its interpretation.
¶34 Indeed, it is clear that the Bill of Rights Committee was concerned, not with expanding the protections already provided by the Fifth Amendment, but rather, it was determined only that Montana’s Constitution prohibit the existing federal practice of allowing a person already tried in one jurisdiction to be again tried by the State. See Montana Constitutional Convention, Verbatim Transcript, Vol. II, at p. 641 and Vol. V, at pp. 1776-79.
¶35 In truth, by its plain language, Article II, Section 25, provides less protection against double jeopardy than does the Fifth Amendment. In pertinent part, Montana’s double jeopardy clause states unambiguously that:
*237 No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction.
There is no mention in Article II, Section 25, of any protection other than not being tried twice for the same offense. There is certainly no textual mention of any protection from multiple punishments. As the majority does recognize, the only reason why Article II, Section 25, provides as much protection as does the Fifth Amendment is because we cannot constitutionally interpret Montana’s Double Jeopardy Clause as providing less — notwithstanding that would be the obvious conclusion from a simple reading of the text of Article II, Section 25, itself. And, it is precisely because the protections afforded by Article II, Section 25, are coextensive with the Fifth Amendment that our decision in Zabawa— which was based upon federal law — remains correct. ¶36 The majority states that it refuses to “pay lip service” to the fundamental principle of double jeopardy. More correctly, it refuses to pay lip service to the plain language of Article II, Section 25. Refusing “to march lock step” with the federal constitution is commendable and appropriate where Montana’s Constitution actually provides more protection than does its federal counterpart — and our State constitution does in many notable respects. Here, however, the Court has gone beyond refusing to march lock step. Rather, in creating from whole cloth a greater double jeopardy protection than is contained in the plain language of Article II, Section 25, and in its history at the Constitutional Convention and in the federal constitution, the majority has marched defiantly backwards through the parade, around the bend and into the swamp.
¶37 Similarly, Justice Leaphart’s attempt to shore up the majority opinion is unavailing. While state courts interpreting their own constitutional double jeopardy clauses are circumscribed by the U.S. Supreme Court’s interpretation of the double jeopardy clause of the Fifth Amendment to provide no less protection than does the federal constitution, that is not to say that even this country’s highest court is in agreement that double jeopardy encompasses the concept of multiple punishments.
¶38 Like Article II, Section 25, the double jeopardy clause of the Fifth Amendment refers only to “jeopardy,” not punishment — “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.” In his dissent in Dept. of Revenue of Montana v. Kurth Ranch (1994), 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767, and noting this lack of textual reference to punishment, Justice *238 Scalia traces in some detail the historical and jurisprudential history of the federal double jeopardy clause and concludes that “’[t]o be put in jeopardy’ does not remotely mean ‘to be punished,’... [and that] ... by its terms, this provision prohibits, not multiple punishments, but only multiple prosecutions.” Kurth, 511 U.S. at 798, 803, 114 S.Ct. at 1955, 1958 (Scalia, J., dissenting, citing Chief Justice Stone in In re Bradley (1943), 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed 608 and Justice Frankfurter in United States ex rel. Marcus v. Hess (1943), 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443). Justice Scalia points out that the belief that there is a multiple-punishment component to the double jeopardy clause can be traced to dictum in Ex parte Lange (1874), 18 Wall. 163, 21 L.Ed. 872, but that it was not until United States v. Halper (1989), 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487, that the Court actually invalidated a legislatively authorized successive punishment on the basis of the this dictum. Kurth, 511 U.S. at 800, 114 S.Ct. at 1956, (Scalia, J., dissenting).
¶39 Halper has, of course, now been abrogated, see Hudson v. United States (1997), 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450), and the U.S. Supreme Court has returned to its pre-Halper interpretation of the Double Jeopardy Clause which acknowledges a constitutional prohibition against multiple punishments but requires successive criminal prosecutions. Hudson, 522 U.S. at _, 118 S.Ct. at 493, (citing, among other cases, Missouri v. Hunter (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, for the proposition that in the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution and then only when such occurs in successive proceedings).
¶40 Accordingly, we necessarily come full circle. There is simply no jurisprudential basis for concluding that Article II, Section 25, provides any greater double jeopardy protection than does the Fifth Amendment, as interpreted by the U.S. Supreme Court. And, it is precisely because the protections afforded by Article II, Section 25, are coextensive with the double jeopardy clause of the Fifth Amendment that our decision in Zabawa — -which was based upon federal law, namely Missouri v. Hunter — remains correct.
¶41 While the majority chooses to ignore the intent of the legislature in enacting the weapons enhancement statute, § 46-18-221, MCA, we are not at liberty to declare this statute unconstitutional in its application on the basis of our interpolation into Article II, Section 25, of language that the people themselves did not include in this con *239 stitutional provision when they enacted it. Indeed, if, as here, this Court can give any meaning it desires to a constitutional provision without any linkage to its text or history, then there really is no point in having a constitution at all.
¶42 I dissent.
CHIEF JUSTICE TURNAGE and JUSTICE GRAY concur in the foregoing dissent.